Hillsborough,
No. 5402.

WILLIAM J. GAUTHIER

*v.*

HENRY A. BERGERON.

Argued January 5, 1966.
Decided April 7, 1966.

*Sheehan, Phinney, Bass & Green* and *Alan L. Reische* ( *Mr. Reische* orally ), for the plaintiff.

*Devine, Millimet, McDonough, Stahl & Branch* ( *Mr. Bartram C. Branch* orally ), for the defendant.

BLANDIN, J. The questions before us are: ( 1 ) Was the admission of the defendant's opinion as to the distance within which he could stop his car reversible error? and ( 2 ) "On the basis

of the trial record, should the court have denied the defendant's motion for reduction of the verdict to $10,052?"

The record would support the following findings of fact by the jury:

The plaintiff and the defendant were riding on a winter night in the defendant's car, which he was driving, when they were struck by a train which was traveling from Boston to White River on the Mill Street crossing in Lebanon, New Hampshire. The roads were dry, the weather was clear, and the crossing was protected by flashers and a bell. The automobile was traveling at about fifteen to twenty miles per hour, and the train was going at approximately the same speed.

Counsel for the plaintiff called the defendant to the stand and was cross-examining him, as was proper under RSA 516:24. He brought out the fact that the defendant was an experienced driver, used to a great variety of situations and conditions, and that he had operated this particular automobile for about a year. During his years of driving, he had occasion to stop "under all sorts of circumstances," including the making of "sudden stops." The brakes of his 1959 model car were in excellent condition. Just before the accident, the defendant had seen a flashing red light, and he was approaching the crossing on an up grade. Having developed these circumstances, plaintiff's counsel asked the witness for his "best estimate" as to the distance within which he could have stopped his car. Defendant's counsel stated: "I object unless there is some evidence here this man is an expert." Upon his objection being overruled, he said "Exception," which the Court granted. The witness then replied to the question: "I think I could have stopped it within four or five feet."

Our rule that the admissibility of opinion evidence depends on whether, within the discretion of the Presiding Justice, it may aid the jury in their search for truth, has been dwelt upon too often and at too great lengths to require extensive review here. *Dowling* v. *Shattuck*, 91 N. H. 234; *Sigel* v. *Boston & Maine R. R.*, 107 N. H. 8. Counsel's objection to the testimony was on the sole and specific ground that the witness was not qualified as an expert. No other grounds, if any should exist, are now open to him. *Plante* v. *Manchester*, 83 N. H. 57, 59. In view of the defendant's experience in operating this particular automobile we believe the court could find that his testimony might

aid the jury. *Dowling* v. *Shattuck, supra;* See *Mittersill Ski Lift Corp.* v. *State,* 105 N. H. 219, 222. The exception to its admission is therefore overruled.

As relevant to the question whether the verdict was so excessive that a remittitur should have been ordered, the jury could have found the following facts: The plaintiff's out of pocket expenses, including hospital, medical and lost wages, amounted to $4,052.28. Up to the time of the accident the plaintiff, who was then fifty-five years of age, had been in good health, very active, "raring to go" and able to carry on his work and other affairs normally, free from pain. On being struck by the train, he was rendered unconscious, and upon recovering his faculties he found himself in a snow bank. He was feeling intense pain in his right arm and leg. He also had a "big gash" on the back of his head and a sizable wound in his right arm caused by flying glass. He had chest pains, "terrific headaches," which persisted up to the time of the trial.

The worst injury was to his right ankle. His physician, Dr. Donald J. Flanagan, diagnosed this as an inversion ankle injury resulting from many torn ligaments and tendons and ruptured blood vessels in the ankle. The doctor described this injury as "almost invariably a severe type of injury . . . almost invariably it can be very much worse than a bone fracture." He felt that it would continue to plague the plaintiff "indefinitely."

As a result of his injuries, the plaintiff was bedridden for some two weeks, on crutches for about three months, and forced to use a cane for several months afterward. His ankle continued to swell and pain him, and he had to soak it in Epsom salts practically every night nearly up to the time of the trial and until another illness forced him off his feet. As a result of the accident, he became depressed, worried, tense and fatigued. If he went out in the evening, he had to remove his shoe often on account of the pain and swelling in his ankle. He ran a "rather high" blood pressure due, as his doctor testified, to "worries and the continual pain . . . " caused by his injuries. While there was some contradictory evidence, to a degree, at least, to be gathered, among other sources, from his hospital record, no physician appeared for the defendant to dispute Dr. Flanagan. Such conflicts as did exist were plainly for the jury. *Davis* v. *Nees,* 100 N. H. 144.

We need not further detail the injuries and their effects upon the plaintiff. In this state of the evidence, it cannot be said as a matter of law, upon the record before us, that error was committed by the Court's denial of the defendant's motion to set aside the verdict or to order a remittitur. *Welch* v. *Hood & Sons,* 104 N. H. 207. We are unable to accept the defendant's argument that what the Court said some twenty-five years ago on January 7, 1941, about the size of the verdict in *Dowling* v. *Shattuck,* 91 N. H. 234, constitutes "a relevant comparison of verdicts." In upholding the $7,000 award, the Court observed: "It is large but we cannot say it is excessive as a matter of law." *Id.,* 243. Such mild whispers of inflation, if any, as may have been audible in January, 1941, hardly compare with the sounds which we hear today. The emaciated value of the dollar when the jury returned its verdict for the plaintiff Gauthier, contrasted with its value in 1941, nearly a year prior to World War II, is an indisputable fact, both relevant and significant. *Lamontagne* v. *Lamontagne,* 100 N. H. 237, 239; 12 A.L.R. 2d 611, 621.

The defendant's exceptions are overruled, and the order is

*Judgment on the verdict.*

All concurred.